# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELIQUE SINGLETARY, an individual, on behalf of herself and on behalf of all persons similarly situated,<br><br>Plaintiffs,<br>v.<br><br>G6 HOSPITALITY, LLC, a Limited Liability Company; MOTEL 6 OPERATING L.P., a Limited Partnership; and Does 1 through 50, Inclusive, et al.,<br>Defendants. | Case No. 3:20-cv-00270-LAB-AHG<br><br>**ORDER GRANTING:**<br><br>1) **MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT [Dkt. 86]; and**<br>2) **MOTION FOR ATTORNEY FEES, COSTS, AND SERVICE AWARDS [Dkt. 85]** |

Plaintiffs Angelique Singletary and Iyana Blackwell ("Plaintiffs") were prospective employees of G6 Hospitality LLC ("Defendant"). They filed this putative class action against Defendant asserting claims for failure to make proper disclosures and failure to obtain proper authorization under the Fair Credit Reporting Act ("FCRA"), failure to make proper disclosure under the Investigative Consumer Reporting Agencies Act ("ICRAA"), and unfair competition under California Business & Professions Code. Plaintiffs now move for final approval of the class settlement (the "Settlement") with

Defendants and of payments to the Class, the Plaintiffs, Class Counsel and the Settlement Administrator. (Dkt. 86-2; Dkt. 85-1).

The Court has considered:

- Plaintiffs' briefing in support of the Motion for Award of Attorneys Fees and Costs and Service Awards ("the "Fee Motion") (Dkt. 85);
- Plaintiffs' Notice of Motion and Motion for Final Approval of Class Settlement (the "Final Approval Motion") (Dkt. 86);
- Plaintiffs' Memorandum of Points and Authorities in Support of the Final Approval Motion (Dkt. 86-1);
- The declarations and exhibits submitted in support of each Motion and the Settlement, including the First Amended Class Action Settlement Agreement, (Dkt. 86-2 Ex. 2), and the Stipulation to Amend the First Amended Class Action Settlement Agreement (Dkt. 79 Ex. 1, and together with the First Amended Class Action Settlement Agreement, the "Agreement");
- This Court's experiences, observations, and file developed in presiding over the resolution of this matter; and
- The relevant law;
- The entire record in this proceeding, including but not limited to the briefing, declarations, and exhibits submitted in support of preliminary approval of the Settlement in its various iterations, including:
  - The Notice Plan for providing full and fair notice to the Class;
  - The lack of any Class Member objections to the Settlement and the four timely requests for exclusion

          from the Settlement;

- o The absence of any objection or response by any official after the provisions of all notices required by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715; and
- o Counsel's oral presentations at the two hearings on the Settlement's fairness;
- This Court's experiences, observations, and file developed in presiding over resolution of this matter; and
- The relevant law.

Based upon these considerations and the Court's findings of fact and conclusions of law as set forth in the Preliminary Approval Order and as discussed below, **IT IS ORDERED:**

1) Final Approval of the Settlement, the terms of which are set forth in the Agreement, is **GRANTED**;
2) The Settlement Class is **CERTIFIED**;
3) Plaintiffs Angelique Singletary and Iyana Blackwell are appointed as Class Representatives and the incentive awards requested in the Fee Motion are **APPROVED**;
4) The payments to Claims Administrator KCC, LLC requested in the Fee Motion are **APPROVED**;
5) Blumenthal Nordrehaug Bhowmik De Blouw LLP is appointed as Class Counsel and the attorneys' fees requested in the Fee Motion are **APPROVED**;
6) Plaintiffs' claims are **DISMISSED WITH PREJUDICE** in accordance with the terms of this Order.

/ / /

/ / /

# DISCUSSION

## I. Definitions

Except as otherwise specified herein, the Court adopts all defined terms set forth in the Agreement for purposes of this Final Approval Order.

## II. Jurisdiction

This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1441, which vests District Court with original jurisdiction because there is a federal question.

The Court also has original jurisdiction over this civil action pursuant to CAFA, Pub. L. No. 109-2 (enacted Feb. 18, 2005) (codified at 28 U.S.C. §§ 1332(d)(2), 1453, 1711–1715), as: (1) the action involves 100 or more potential class members; (2) any class members are citizens of a state different from any Defendant; and (3) the aggregate amount-in-controversy exceeds $5,000,000,00, exclusive of costs and interest. 28 U.S.C. §§ 1332(d)(2), (d)(6), and (d)(11)(B)(i).

## III. Findings and Conclusions

### A. Definition of Class and Class Members

The Court adopts the Preliminary Approval Order's definitions of the Class, comprised of the Class Members. The definitions of Class and "Class Period" are reproduced below:

- "Class" means all individuals who applied to work for either defendant G6 Hospitality LLC and/or defendant Motel 6 Operating L.P. and submitted one of Defendants' background check forms that were allegedly defective because the form contained information for multiple states and for whom background checks were run by Defendants or on Defendants' behalf in the United States during the Class Period. The Class specifically excludes individuals who applied to work for Defendants and underwent no

> background check in connection with their application or who underwent a wholly unrelated background check during the Class Period.
>
> - Class Period means the period of time from December 10, 2017 to May 3, 2020.

The Court excludes from the Class all individuals who requested such exclusion. Those individuals are listed in the Declaration of Claims by Claims Administrator Sharon Howard. (Dkt. 88 ¶ 7).

## B. Definition of Class and Class Members

Before approving a settlement of Class Claims, the Court must confirm that the Class Form is appropriate to the case. Rule 23(a) requires a class to satisfy four prerequisites, generally referred to as numerosity, commonality, typicality, and adequacy of representation. If these are satisfied, the Court must confirm that the action meets one of the class action types enumerated in Rule 23(b)—as relevant here, subsection (3) of that Rule requires that the common questions predominate over individual ones, and that a class action be superior to other available methods for fairly and efficiently adjudicating the controversy. Because the Court finds that each of these requirements is met, the Court grants final certification of the Class. All Class Members are subject to this Order.

### 1. Numerosity

The Class here includes 14,078 members (after accounting for the four opt-outs). This is sufficiently numerous that joinder of all Class Members is impracticable, so Rule 23's numerosity requirement is satisfied. Fed. R. Civ. P. 23(a)(1).

### 2. Commonality

A properly certified class must also have questions of law or fact common to the class members. Fed. R. Civ. P. 23(a)(a). Each Class

Member submitted a background form provided by defendants, and those forms were allegedly defective. The proposed Class satisfies this requirement because its claims depend on a question regarding the sufficiency of the disclosures contained in the consent form Defendant provided to each Class Member.

### 3. Typicality

A class can be certified only if the class representative's claims are typical of the class's claims. Fed. R. Civ. P. 23(a)(3). A representative's claims are typical "if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Co.,* 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011). Like the other Class Members, each Plaintiff allegedly applied for a job with Defendants, submitted an allegedly violative background check form, and underwent a background check. The Court finds that Plaintiffs' claims are reasonably co-extensive with those of the other Class Members.

### 4. Adequacy of Class Representatives

The next prerequisite to class certification, adequacy of representation, "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997); Fed. R. Civ. P. 23(a)(4). No party or objector contends that the Class lack adequate representation, and Class Counsel has fully and completely prosecuted all claims available to the Class. Plaintiffs possess no apparent interests adverse to the Class. Class Counsel and the named Plaintiffs are adequate to represent the Class.

### 5. The Class Meets the Requirements of Rule 23(b)(3)

Having met Rule 23(a) prerequisites for class certification, Plaintiffs contend that the Class can be certified under Fed. R. Civ. P. 23(b)(3). (*See*

Dkt. 62 ¶ 31(c)). This requires the Court to find that questions of law or fact common to Class Members predominate over any questions affecting only individual members and that class treatment is the superior means to adjudicate plaintiffs' claims. Fed. R. Civ. P. 23(b)(3). These requirements are satisfied as to each Class.

Predominance can be established by the existence of a companywide policy or practice. *See, e.g., Duque v. Bank of America,* Case No. SA CV 18-1298 (MRQx), 2018 WL 10483813 at *3-4 (C.D. Cal. Dec. 10, 2018). Here, the Class's claims arise from Defendant's allegedly defective background check forms. The common question surrounding these policies predominate over any individual questions, so the predominance requirement is met.

The Court must also confirm that the class form is superior to other methods of litigation before certifying a class under Rule 23(b). This inquiry "requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon* , 150 F.3d at 1023. The "dominant[]" objective of the class form is "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all. . . . The policy at the very core of the class action mechanism is to overcome the problem that small recovery do not provide incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem*, 521 U.S. at 617 (cleaned up).  The Class here consists of over ten thousand members and the released claims, absent proof of actual damages, are limited to $10,000 or less (and typically result in far smaller recoveries). 15 U.S.C. § 1681n(a)(1) (willful violator liable for actual damages "not less than $100 and not more than $1,000"); Cal. Civ. Code § 1786.50(a)(1) (defendant liable under ICRAA in individual actions for greater of actual damages or $10,000); Cal. Civ. Code

§ 1785.31(a)(2) (under CCRAA, willful violator is liable for actual damages and punitive damages between $100 and $5,000); *see also, e.g., Pietras v. Sentry Ins. Co.*, 513 F. Supp. 2d 983, 985 (surveying FCRA class actions and finding average settlement of $34.59 per class member). The Court finds that each individual Class Member's claim would be sufficiently small that they wouldn't have a sufficient incentive to bring individual actions, so the superiority requirement is satisfied.

With the requirements of Rules 23(a) and (b)(3) satisfied, the Court grants final certification of the Class for settlement purposes only.

### IV. The Settlement

Federal Rule of Civil Procedure 23(e) requires "district courts to review proposed class action settlements for fairness, reasonableness, and adequacy." *Roses, 1-2 v. SFBSC Management, LLC,* 944 F.3d 1035, 1048 (9th Cir. 2019). Because named plaintiffs, class counsel, and defense counsel may have incentives inconsistent with the interests of absent class members, the Court must take care to protect the due process rights of those absent class members. And because this incongruity is most pronounced where the settlement comes prior to class certification, "settlement approval requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Id.* At 1048–49 (internal marks and citation omitted). The Court must look particularly for evidence of collusion or other conflicts of interest to protect absent class members. *Id.*

Applying this standard, the Court finds that the Settlement is fair, reasonable, and adequate to the Class in light of the complexity, expense, and likely duration of the litigation (including appellate proceedings), as well as the risks involved in stablishing liability, damages, and the appropriateness of class treatment through trial and appeal. *See Rodriguez*

8

20cv00270-LAB-NLS

*v. West Publ'g Corp.,* 563 F.3d 948, 963 (9th Cir. 2009). The Settlement appears to be the result of arm's-length negotiation, and the record doesn't support a conclusion that the Settlement is the result of either: 1) collusion among Plaintiffs and Class Counsel, and Defendants; or 2) conflicts of interest between Plaintiffs and Class Counsel, on the one hand, and the Class Members, on the other.

### A. Generally

Under the terms of the Agreement, Defendant will pay a total of $1,397,570. After deducting all payments of Court-approved attorney fees and expenses, class representative service awards, and settlement administration expenses from the Gross Settlement Amount, 25% of the remaining Net Settlement Amount will be paid to Class Members.

### B. The Settlement Affords Meaningful Relief

Accounting for the Court-approved attorney fees and expenses payments, class representative service payments, and settlement administration expenses provided in this Order, the Class will receive $821,714, or $63.29 per Class Member. This is a reasonable recovery for the Class's claims. *See, e.g., Pietras*, 513 F. Supp. 2d at 985 (surveying FCRA class actions and finding average settlement of $34.59 per class member).

On the other side of the ledger and as described in further detail *infra*, Section VII, participating Class Members will release the claims actually brought and other background check claims that could have been brought under federal and state law arising out of the allegations of the operative complaint and that accrued on or before May 3, 2020, but excluding all other claims, including claims for labor law violations. Plaintiffs themselves will release all "claims, transactions or occurrences between them [and Defendant or its affiliated entities or individuals] that occurred during the

Class Period." (Dkt. 86-2 at 4).

The Court finds the release reasonable in scope and, in light of the risks, costs, and duration of continued litigation, the amount paid to Plaintiffs and the Class fair, reasonable, and adequate consideration for that release.

**C. No Collusion or Conflicts of Interest**

The Court finds no evidence to support a conclusion that Plaintiffs and the Defendant colluded. To the contrary, up to and through the Settlement, the Parties vigorously litigated and negotiated this action, as evidence by the docket.

However, the Agreement's "clear sailing" provision, under which Defendants agreed not to contest any request for fees exceeding 25% of the Settlement funds, can be a "subtle sign of collusion." *SFBSC Management*, 944 F.3d at 1049. The presence of such a provision requires the Court to look closely at the reasonableness of the recovery and the reasonableness of fees to confirm that Class Counsel haven't negotiated a benefit for themselves using the Class's claims as leverage. *Id.*

That scrutiny doesn't reveal evidence that Class Counsel bargained away a class benefit in exchange for clear sailing on an unreasonably large fee award. The Settlement's benefit to the Class is appropriate in relation to the likelihood of success at trial and the magnitude of the Class's claims. Class Counsel's requested fees withstand close scrutiny, too. They seek 25% of the total—equal to the Ninth Circuit's benchmark rate and less than the maximum the clear sailing agreement allows without objection. These fees are reasonable. And while the Court finds that the maximum fees allowable under the clear sailing provisions would be too high, that maximum amount isn't so extraordinary that the Court can infer that Class Counsel obtained the provision by bargaining away a class benefit.

Because it's unlikely that the clear sailing agreement provided a non-negligible benefit to Class Counsel, and because the Class's benefit from the Settlement is adequate, the Settlement withstands close scrutiny, and the court finds no apparent collusion.

### D. Response of the Class

The Class's responses after full, fair, and effective notice (as discussed below) favor final approval of the Settlement. At least 13,489 Class Members received notice. (*See* Dkt. 88 ¶¶ 3–5). None filed an objection to the Settlement, and only four timely requested exclusion.

## V. Notice

Pursuant to the Preliminary Approval Order, KCI sent the Notice of Pendency of Class Action Settlement and Hearing Date for Court Approval ("Class Notice") to 14,082 Class Members by mail. Of these, 596 were returned as undeliverable, after which KCC identified updated addresses for 3 Class Members. KCC also sent emails to 11,625 Class Members. The Class Notice informed Class Members of the terms of the Settlement, their right to receive a Settlement Share, their right to comment on or object to the Settlement and/or the attorneys' fees and costs, their right to elect not to participate in the Settlement and pursue their own remedies, and their right to appear in person or by counsel at the final approval hearing and be heard regarding approval of the Settlement. Adequate periods of time were provided by each of these procedures.

The notice procedure afforded adequate protections to Class Members and provides the basis for the Court to make an informed decision regarding approval of the settlement based on the response of Class Members. The Class Notice provided in this case was the best notice

practicable, satisfying the requirements of law and due process.

## VI. Costs and Fees

The fees and expenses of KCC, LLC in administering the Settlement, in the amount of $85,000, are fair and reasonable. The Court herby grants final approval to and orders that the payment of that amount be paid of the Gross Settlement Amount in accordance with the Agreement.

The requested class representative service payments and attorneys' fees and costs are fair and reasonable. The Court hereby grants final approval to and orders that the payment of $5,000 to each of the two Plaintiffs for their class representative service payments, $349,392.50 for attorneys' fees to Class Counsel, and $10,127.83 for reimbursement of costs be paid out of the Gross Settlement Amount in accordance with the Settlement.

## VII. Release

Upon entry of final judgment, Class Members, including Plaintiffs, will fully release and forever discharge Defendants and the Released Parties of all claims that were or reasonably could have been alleged based on the facts in the operative complaint which occurred during the Class Period, including any claims related to background checks and any claims arising under the FCRA, CCRAA, ICCRAA, and expressly excluding all other claims, including claims for Labor Code violations, wrongful termination, unemployment insurance, disability, social security, and workers' compensation, and claims outside of the Class Period (collectively, the "Released Claims").

Upon entry of final judgment, Plaintiffs will also fully and finally release Defendants and the Released Parties from Plaintiffs' Released Claims, which include any and all claims, transactions, or occurrences

between them that occurred during the Class Period.

Nothing in this order shall preclude any action to enforce the Parties' obligations under the Settlement or under this order, including the requirement that Defendant make payment in accordance with the Agreement.

If, for any reason, the Effective Date (as defined by the Settlement) does not occur, this Order will be vacated; the Parties will return their respective positions in this action as those positions existed immediately before the Parties executed the Agreement; and nothing stated in the Agreement or any other papers filed with this Court in connection with the Settlement will be deemed an admission of any kind by any of the Parties or used as evidence against, or over the objection of, any of the Parties for any purpose in this action or in any other action.

The Parties represent that they entered into the Settlement solely for the purpose of compromising and settling disputed claims. Defendant expressly denies any violation of law or any liability whatsoever to Plaintiffs and/or the Class, individually or collectively.

## CONCLUSION

The Settlement is ordered finally approved, and that all terms and provisions of the Settlement are ordered to be consummated. Participating Class Members will be bound by the Settlement. The Parties are hereby ordered to comply with the terms of the Agreement.

The action is **DISMISSED WITH PREJUDICE**, and final judgment is entered. Each side will bear its own costs and attorneys' fees except as provided by the Settlement and this Order.

The Parties have consented to the continued jurisdiction of United States Magistrate Judge Allison H. Goddard or any Magistrate Judge who

/ / /

may later be assigned over all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this Order and the Settlement.

The Clerk is directed to close the case.

**IT IS SO ORDERED.**

Dated: June 17, 2022

*[signature]*
Hon. Larry Alan Burns
United States District Judge